## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| In re: Jeffrey J. Prosser, )<br>) | Bankruptcy No. 06-3009<br>Chapter 7 |
| Debtor. )<br>_____) | |
| )<br>STAN SPRINGEL, CHAPTER 11 TRUSTEE )<br>OF THE ESTATE OF INNOVATIVE )<br>COMMUNICATION CORPORATION, AND )<br>JAMES P. CARROLL, AS CHAPTER 7 )<br>TRUSTEE OF THE ESTATE OF JEFFREY )<br>J. PROSSER ) | Adv. Pro. No. 07-03010<br><br>Civil Action No. 2013-087<br>Civil Action No. 2013-057<br>Civil Action No. 2013-056<br>Civil Action No. 2013-010 |
| Plaintiffs/Appellees, )<br>)<br>v. )<br>) | |
| JEFFREY J. PROSSER, DAWN PROSSER, )<br>JUSTIN PROSSER, MICHAEL PROSSER, )<br>SYBIL G. PROSSER, MICHELLE )<br>LABENNETT, AND LYNDON A. PROSSER )<br>)<br>Defendants/Appellants. )<br>_____) | |

**Attorneys:**
**Yann Geron, Esq.,**
**William H. Stassen, Esq.,**
**Samuel H. Israel, Esq.,**
Philadelphia, PA
    *For the Plaintiff/Appellee James P. Carroll, Chapter 7 Trustee*

**Robert F. Craig, Esq.,**
Omaha, NE
**Norman A. Abood, Esq.,**
Toledo, OH
**Lawrence H. Schoenbach, Esq.,**
New York, NY
    *For the Defendant/Appellant Jeffrey J. Prosser*

**Jeffrey B. Moorehead, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant/Appellant Dawn Prosser*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Appellants Jeffrey Prosser and Dawn Prosser's Motion to Stay (Dkt. No. 7), in which they request that the Court stay the proceedings by enjoining the sale of certain real property pending appeal. For the reasons discussed below, the Court will grant the Motion.

## I. BACKGROUND

Jeffrey Prosser ("Mr. Prosser") is a debtor in both a Chapter 7 bankruptcy case and a Chapter 11 bankruptcy case.[1] On September 18, 2012, the United States Bankruptcy Court for the District of the Virgin Islands (the "Bankruptcy Court") held Mr. Prosser and his wife, Dawn Prosser ("Mrs. Prosser") (collectively the "Prossers"), in civil contempt of court for violating three Bankruptcy Court Orders. (Bk. Dkt. No. 1006). At the center of the controversy was the Prossers' wine collection ("the Wines"), once valued at over two million dollars. *Springel v. Prosser (In re Prosser)*, 2012 Bankr. LEXIS 4332, at * 4 (Bankr. D.V.I. Sept. 18, 2012).

The Wines were located at the Prossers' residence in Palm Beach, Florida (the "Palm Beach Property"), the Prossers' residence in St. Croix, Virgin Islands (the "Shoys Estate Property"), and various storage facilities. *Id.* In 2008, inventories were taken of the Wines at the Palm Beach Property on January 16 and the Shoys Estate Property on January 25 and 26. *Id.* at

---

[1] Mr. Prosser's Chapter 7 Bankruptcy case is No. 06-30009. His Chapter 11 Bankruptcy case is No. 07-30012. His bankruptcy has also spawned several "adversary proceedings" brought against him by his Chapter 7 and Chapter 11 trustees. Currently before the Court are four appeals from Orders issued in Adversary Proceeding No. 07-03010. All citations to "Bk. Dkt. No." refer to filings in that case. All citations to the four appeals and various bankruptcy cases list the specific case numbers.

2

*6–10. Both inventories were carried out by the Chapter 7 Trustee accompanied by employees of Christie's Inc. ("Christie's"), a company hired to sell property of the estate via auction. *Id.* Additionally, a forensic accountant assisted with the Palm Beach Property inventory.

The Bankruptcy Court's three relevant Orders with respect to the Wines are as follows:

1. A preliminary injunction (the "Injunction") granted on December 11, 2007, which provided that the Prossers "shall keep the [Wines] in secure locations and protect [them] from destruction, damage, modification, theft, removal, or transfer, pending [their] turnover to the Trustees . . . ." (Bk. Dkt. No. 79).

2. An Order (the "9019 Order"), issued on December 12, 2008, approving of a stipulation[2] between the Chapter 7 Trustee and Mrs. Prosser in which they agreed to divide the Wines evenly and further agreed as follows: "Dawn Prosser shall continue to store, maintain, and protect the Dawn Prosser Wines in continued compliance with the Injunction. Nothing in this Stipulation shall be deemed to constitute a modification or alteration to in any way affect the continuing enforceability of the Injunction as it relates to the Wines." (Adv. Pro. No. 08-03010, Dkt. No. 61 at 2).[3]

3. An Order requiring turnover of certain property to the Chapter 7 Trustee (the "Turnover Order") issued on February 9, 2011, providing that the Dawn Prosser Wines were the property of the Chapter 7 Estate; ordering the Prossers to turn the Wines over to the Chapter 7 Trustee; and converting the Injunction

---

[2] The stipulation was a compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure, which provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

[3] "The 'Dawn Prosser Wines' was a defined term for the 50% share preliminarily allocated to Mrs. Prosser while her claim to ownership was litigated." (Bk. Dkt. No. 1006 at 14 n.18).

from preliminary to permanent. (Bk. Dkt. No. 728 at 2).

.          Following the 9019 Order, the Wines were evenly divided between the Chapter 7 Trustee and Mrs. Prosser, "so as to enable a sale of the Estate Wines pending resolution of the other Wine Claims." (Adv. Pro. No. 08-03010, Dkt. No. 44 at 5). The Wines were generally distributed so that the Wines located in storage facilities were allocated to the Chapter 7 Trustee and the Wines located in the Prossers' residences (the Palm Beach Property and the Shoys Estate Property) were allocated to Mrs. Prosser. Following the issuance of the 9019 Order, the Chapter 7 Trustee auctioned the Estate's allocation of the Wines. (Bankruptcy Case No. 06-30009, Dkt. No. 2523). The remainder of the Wines were left in the possession of the Prossers, subject to the strict dictates of the Injunction which required the Prossers to keep them secure and protected from damage. (Adv. Pro. No. 08-03010, Dkt. No. 61 at 2).

On March 11, 2011, following the issuance of the Turnover Order, the Chapter 7 Trustee performed a second inventory of the Palm Beach Wines with the assistance of two forensic accountants and three employees of Christie's. 2012 Bankr. LEXIS 4332, at *27. On July 29, 2011, the Chapter 7 Trustee instructed other Christie's employees to pick up the Shoys Estate Wines. *Id.* at *28–29. At both locations, it was discovered that about half of the Wines that were present during the initial inventories in 2008 were missing. *Id.* at *28, 36. The remaining Wines at the Palm Beach Property were packed up and removed for auction. *Id.* at *28.

The remaining Shoys Estate Wines, however, were not removed from the property. The Christie's employees determined that they would not be marketable because of the conditions of their storage. *Id.* at *41. They found that the air being blown into the room was tepid and the Wines were warm to the touch, were stacked haphazardly, were in a state of deterioration, had been exposed to light and heat, and had missing or ruined labels in some instances. *Id.* at *30–38.

4

They also intended to sample six of the most durable Wines, but determined that, based on the fact that all six of the corks broke upon opening, the Wines were "out of condition" and unmarketable. *Id.* at *40–41.

On September 18, 2012, the Bankruptcy Court held the Prossers in civil contempt for violating its three Orders:

> The court finds that since December 2007, when the Injunction was entered, the Prossers have been forbidden, by explicit Order of this court, from disposing of, consuming, damaging, or in any other way compromising the integrity of the Wines. The court finds that the Prossers had knowledge of the orders and flagrantly disobeyed them by dissipating (or permitting the dissipation of) approximately 52% of the inventoried bottles of Wine at the Palm Beach Property, dissipating (or permitting the dissipation of) approximately 46% of the inventoried 980 bottles of Wines at Shoys Estate, and by failing to maintain (or to make reasonable efforts to maintain) the remaining Wines at the Shoys Estate in a protected, light and temperature controlled environment (as they were stored in 2008) such that they became unmarketable by Christie's. Thus, we find Jeffrey Prosser and Dawn Prosser in civil contempt of court. Moreover, their violation of three orders of the court is so egregious that sanctions are warranted.

*Id.* at *42–43. The Bankruptcy Court's Contempt Order found the Prossers jointly and severally liable for "any and all damages to be awarded pursuant to this Memorandum Opinion and Order." (Bk. Dkt. 1006). The Bankruptcy Court also ordered the Chapter 7 Trustee to file a fee application presenting the fees, costs, and expenses incurred by the Chapter 7 Estate's counsel, investigators, and experts in the filing and litigation of the contempt motion. (*Id.*) On January 18, 2013, the Bankruptcy Court entered an Order approving the Chapter 7 Trustee's amended fee application and directing the Prossers to pay $528,086.07 (the "initial sanction award") within thirty days. (Bk. Dkt. No. 1023). On February 1, 2013, Mr. Prosser filed a "Notice of Appeal" in this Court, appealing the Bankruptcy Court's September 2012 Contempt Order and January 2013 Order approving the Chapter 7 Trustee's amended fee application. (3:13-cv-00010, Dkt. No. 1).

When the Prossers failed to comply with the Bankruptcy Court's January 2013 Order, the

Chapter 7 Trustee moved for compliance with that Order. (Bk. Dkt. 1066). On May 24, 2013, the Bankruptcy Court entered a Supplemental Order directing the Prossers to pay the Chapter 7 Trustee an additional $419,135.59 (the "supplemental sanction award"), "reflecting the diminution in value of the missing and unmarketable wines that are the subject of the Contempt Order," and requiring this additional amount to be paid within thirty days. (Bk. Dkt. 1078).

On May 31, 2013, the Bankruptcy Court issued an Order coercing the Prossers' compliance with the January 2013 Contempt Order. (Bk. Dkt. No. 1088). In this Order, the Bankruptcy Court laid out a plan by which the Prossers would "purge their contempt of the Contempt Fee Order . . . by paying the Trustee the Initial Sanction Award [of $528,086.07]" in sixty monthly payments. (*Id.* at 4). The Bankruptcy Court further ordered that the Prossers would be in default if they missed a monthly payment and that, in such an event, the Chapter 7 Trustee would provide them with notice of default. (*Id.* at 4–5). Failure by the Prossers to cure a payment default within five days would constitute an immediate waiver ("purge opportunity waiver") by the Prossers. (*Id.* at 5). Within ten days of the purge opportunity waiver, the Prossers would, without further Order of the Bankruptcy Court execute deeds of title conveying ownership of Plots 168, 169, 170, and 171 of Estate Shoys (the "Anna's Hope Property") to the Chapter 7 Estate. (*Id.*) Were the Chapter 7 Trustee to successfully sell the Anna's Hope Property, the money would go to the balance of the amount of the initial sanctions award then owed by the Prossers. (*Id.* at 6). Any "sale credit" exceeding the amount due on the initial sanctions award would be paid to the Prossers. (*Id.*) Additionally, upon motion to the Bankruptcy Court, the Chapter 7 Trustee could seek permission to offset any remaining credit from the sale to any portion of the supplemental sanction award then due. (*Id.*)

On June 6, 2013, the Prossers filed Notices of Appeal in this Court, appealing the

Bankruptcy Court's May 24, 2013 Supplemental Order (3:13-cv-00057, Dkt. No. 1), and the Bankruptcy Court's May 31, 2013 Order. (3:13-cv-00056, Dkt. No. 1).

The Chapter 7 Trustee sent the Prossers a notice of default on July 2, 2013. (Bk. Dkt. No. 1113, ex. 1). On August 23, 2013, the Bankruptcy Court issued an Order enforcing the January 2013 Contempt Order, which authorized the Chapter 7 Trustee to execute quitclaim deeds on behalf of the Prossers, thereby transferring the Anna's Hope Property to the Chapter 7 Estate. (Bk. Dkt. No. 1133). The Order further stated that, following the transfer, "[t]he Chapter 7 Trustee shall . . . sell the Anna's Hope Property for the purpose of satisfying the amounts due on the Initial Sanctions Award and Supplemental Sanctions Award." (*Id.* at 3). On September 6, 2013, the Prossers filed a Notice of Appeal in this Court, appealing the Bankruptcy Court's August 23, 2013 Order. (3:13-cv-00087, Dkt. No. 1).

On September 5, 2013, in response to the August 23 order, the Prossers filed a "Verified Motion and Affidavit for a Temporary Restraining Order and Preliminary Injunction" in Mr. Prosser's appeal of the September 2012 and January 2013 Contempt Orders before this Court. (3:13-cv-00010, Dkt. No. 5). On September 13, 2013, the Court held a hearing on the Prossers' Motion and denied it from the bench, finding that the Prossers had not met their burden of establishing the elements required for a temporary restraining order. (3:13-cv-00010, Dkt. No. 30). Because the Prossers raised some arguments at the hearing that differed from those presented in their briefs, the Court set a new briefing schedule to allow the Prossers to present the arguments raised at the hearing and to afford the Trustee the opportunity to respond. (*Id.*)

On October 4, 2013, the Court granted Appellants' "Motion to Consolidate Appeals," thereby consolidating Appellants' appeals of the September 2012 and January 2013 Contempt Orders; the May 24, 2013 Supplemental Order; the May 31, 2013 Compliance Order; and the

7

August 23, 2013 Transfer Order. (3:13-cv-00087, Dkt. No. 17).

With the filing of the Prossers' instant Motion on September 23, 2013 (3:13-cv-00087, Dkt. No. 7), the Chapter 7 Trustee's Response (3:13-cv-00010, Dkt. No. 43), and the Prossers' Reply (3:13-cv-00087, Dkt. No. 18), this matter is ripe for resolution.

## II. APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 62(d), which Bankruptcy Rule of Procedure 7062 incorporates by reference, provides in relevant part:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the Court approves the bond.

Fed. R. Civ. P. 62(d). A party who files a satisfactory supersedeas bond is entitled to a stay of a money judgment as a matter of right. Fed. R. Civ. P. 62(d); *In re TWA*, 18 F.3d 208, 211 (3d Cir. 1994). A supersedeas bond under Rule 62(d) functions to secure the prevailing party in the costs it incurs in foregoing execution of its judgment during the process of the appeal. *Chalfonte Condo. Apt. Ass'n v. QBE, Ins. Corp.*, 695 F.3d 1215, 1232 (11th Cir. 2012) (citing *Poplar Grove Planting & Refining Co. v. Bache Hasley Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979)).

## III. DISCUSSION

In their Motion, the Prossers request that the Court enter a stay pending appeal pursuant to Federal Rule of Civil Procedure 62(d), which would, in effect, enjoin the Chapter 7 Trustee from selling the Anna's Hope Property until the resolution of the Consolidated Appeal on the merits. The Prossers offer the Anna's Hope Property as a supersedeas bond.[4]

---

[4] The Prossers alternatively request a preliminary injunction. Because the Court will approve the Anna's Hope Property as a supersedeas bond and thereby issue an automatic stay pursuant to

The Chapter 7 Trustee presents several arguments in opposition to a stay. It contends that the Prossers are not entitled to an automatic stay under Rule 62(d) because the Anna's Hope Property is not of sufficient value to serve as a supersedeas bond. Further, the Trustee argues that, because the Orders which the Prossers are appealing do not award money judgments, they are not entitled to an automatic stay. Finally, the Trustee contends that the Court lacks jurisdiction because there is no active case or controversy or, in the alternative, that the issue of the sale of the property is not yet ripe.

A.    **The Anna's Hope Property as a Supersedeas Bond**

The Prossers' rationale for posting the Anna's Hope Property as their supersedeas bond is as follows. The Bankruptcy Court ordered the Prossers to pay a total sanction award of $947,221.66.[5] Under the May 31, 2013 and August 23, 2013 Orders, the Chapter 7 Trustee must pay a "sale credit" to the Prossers of any money from the sale of the Anna's Hope Property exceeding the amount of the initial and supplemental sanctions awards. (Bk. Dkt. Nos. 1088 & 1133). The Prossers submitted a realtor's pricing recommendation for the Anna's Hope Property, which provides a total recommended listing price for the four plots of $2,185,000. (3:13-cv-00087, Dkt. No. 14). In the event that the Court approves the Anna's Hope Property as the Prossers' supersedeas bond, and the Chapter 7 Trustee prevails in this Appeal, the sale credit paid to the Prossers will be reduced by the amount necessary to secure the Trustee in the costs it incurs, including accrued interest on the sanction awards, in foregoing the sale of the Anna's

---

Rule 62(d), the Court need not evaluate the parties arguments with regard to the requested preliminary injunction.

[5] The Bankruptcy Court's January 2013 Order levied a $528,086.07 initial sanction award (Bk. Dkt. No. 1023) and the May 24, 2013 Supplemental Order levied a $419,135.59 supplemental sanction award (Bk. Dkt. No. 1078).

Hope Property during the process of this Consolidated Appeal.[6] *Chalfonte Condo.*, 695 F.3d at 1232 (11th Cir. 2012). Based on the realtor's valuation of the Anna's Hope Property, the Prossers argue that the sale credit (the profit from the sale exceeding the amount of the sanctions awards) would be sufficient to so secure the Chapter 7 Trustee.

As discussed below, the Court is persuaded by the Prossers' argument and rejects Appellee's challenges to that argument. Accordingly, the Court will approve the Anna's Hope Property as the Prossers' supersedeas bond.

**B.     The Value of the Anna's Hope Property**

The Chapter 7 Trustee argues that the Court should not approve the Anna's Hope Property as the Prossers' supersedeas bond because Mr. Prosser listed the value of the property as $400,000 in his 2009 bankruptcy schedules. (3:13-cv-00010, Dkt. No. 43-5). By affidavit filed with the current Motion, Mr. Prosser now values the property at $2,000,000, and explains the factors he considered when he valued the property in his schedules and what allegedly has changed to account for the higher valuation. (3:13-cv-00087, Dkt. No. 7-1). The Chapter 7 Trustee argues that the Court should not be persuaded by Mr. Prosser's affidavit, given that the Bankruptcy Court, in its Opinion denying Mr. Prosser's discharge, found that "[t]he sheer number of material omissions, undervaluations, and mischaracterizations with respect to [Mr. Prosser's] bankruptcy schedules are prima facie evidence of [Mr. Prosser's] complete and utter disregard for the truth." (3:08-ap-03011, Dkt. No. 207 at 51). The Trustee also analogizes to the Palm Beach Property which, like the Anna's Hope Property, was held in a tenancy by the entireties, and eventually sold for a similar amount to what Mr. Prosser listed in his bankruptcy

---

[6] The Chapter 7 Trustee argues that "[t]he Prossers no longer own Anna's Hope and cannot post it as a bond to secure these appeals." (3:13-cv-00010, Dkt. No. 43 at 22). However, although the Prossers phrase their offer of bond as the Anna's Hope Property itself, in actuality they are offering their interest in the sale credit as a supersedeas bond.

10

schedules. (3:13-cv-00010, Dkt. No. 43 at 25 n.11).

However, the Court need not rely solely on Mr. Prosser's affidavits for its approval of the Anna's Hope Property as a supersedeas bond, because the affidavits are supported by a realtor's recommended listing price of $2,185,000 as evidence of the value of the Anna's Hope Property. (3:13-cv-00087, Dkt. No. 14). The Chapter 7 Trustee does not present any substantive challenge to the realtor's recommended price and, as such, presents no argument as to why the Court should not rely on it. Indeed, courts commonly rely on listing prices as evidence of the value of real property. *See, e.g.*, *Yreka W.R.R. Co. v. Taveras*, 2012 U.S. Dist. LEXIS 77191 (E.D. Ca. June 4, 2012); *In re Kolodziej*, 2010 Bankr. LEXIS 1990 (Bankr. N.D. Ind. July 9, 2010); *In re Tidal Constr. Co.*, 446 B.R. 620 (Bankr. S.D. Ga. Sept. 28, 2009); *Penn Nat'l Ins. v. HNI Corp.*, 2007 U.S. Dist. LEXIS 74082 (M.D. Pa. Oct. 3, 2007); *Portland Natural Gas Transmission Sys v. 19.2 Acres of Land in Haverhill*, 195 F. Supp. 2d 314 (D. Mass. 2002).

The value of a supersedeas bond must be a "sum sufficient to pay the judgments and costs, interest, and damages for delay" in order for it to achieve its function of making whole an appellee that successfully defends an appeal. *Transamerica Occidental Life Ins. Co. v. Total Sys., Inc.*, 2011 U.S. Dist. LEXIS 66052, at *6 (D.N.J. June 14, 2011) (internal citation and quotation marks omitted). The amount deemed satisfactory for the supersedeas bond is within the discretion of the district court. *See Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006) (internal citation omitted). A satisfactory supersedeas bond must include applicable interest on the full award in order to gain approval from this Court. *See Four Winds Plaza Corp. v. Caribbean Fire & Associates, Inc.*, 2005-201, 2008 WL 1970000, *2 (D.V.I. May 5, 2008). The Virgin Islands Code provides that the applicable rate for post-judgment interest is four percent per year. 5 V.I.C. § 426.

Should the Chapter 7 Trustee succeed in defending this Consolidated Appeal, the Prossers' sale credit—the difference between the sale price of the Anna's Hope Property and the amount of the sanctions awards—should be sufficient to cover four percent interest per year on the sanctions awards as well as any costs and damages for delay.[7] Accordingly, the Court finds that the Anna's Hope property is an acceptable supersedeas bond.

## C.    The Nature of the Sanction Awards

The Chapter 7 Trustee argues that, in order to obtain a stay pending appeal, the Prossers must establish the four elements of the standard for preliminary injunctions: likelihood of success on the merits; irreparable injury to the moving party; no substantial injury to the opposing party; and that the public interest favors the stay. (3:13-cv-00010, Dkt. No. 43 at 19) (citing *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)). However, courts typically apply these factors when evaluating a motion for a stay of a non-money judgment under Rule 62(c), which pertains to appeals from orders that "grant[], dissolve[], or den[y] . . . injunction[s]." Fed. R. Civ. P. 62(c); *Frommert v. Conkright*, 639 F. Supp. 2d 305, 308 n.3 (W.D.N.Y. 2009); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3606 at 676–77 (3d ed. 2012). Courts label the stays granted under Rule 62(c) as "discretionary." *Becker v. United States*, 451 U.S. 1306, 1308 (1981); *United States v. Orr Water Ditch Co.*, 391 F.3d 1077, 1079 n.2 (9th Cir. 2004); *Robbins v. Pepsi-Cola Metro. Bottling Co.*, 800 F.2d 641, 642 (7th Cir. 1986).

Stays of money judgments under Rule 62(d), in contrast, are automatic upon the court's

---

[7] The Chapter 7 Trustee cites case law for the proposition that real property should be worth twice as much as the judgment it secures. *United States v. O'Callaghan*, 805 F.Supp.2d 1321, 1325 (M.D. Fla. 2011) (citing *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101, 1104 (S.D. Cal. 1990)). Even assuming, *arguendo*, the validity of this proposition, the Court notes that the realtor valued the Anna's Hope Property at more than twice the amount of the sanction awards.

12

approval of the supersedeas bond. *In re TWA*, 18 F.3d at 211; *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) ("Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment."). Although the Prossers appeal the transfer of property, the purpose of that conveyance was for the Chapter 7 Trustee to sell the Anna's Hope Property in order to satisfy the sanction awards. (Bk. Dkt. No. 1133 at 3–4). Thus, the practical effect of the Prossers' request for a stay is a stay of a money judgment. *Cf. Miller v. LeSea Broadcasting, Inc.*, 927 F. Supp. 1148, 1151 (E.D. Wis. 1996) (applying Rule 62(c) to a requested stay of an order requiring specific performance of a contract).

The sanction awards here are "money judgments" for purposes of Rule 62(d). As the Fifth Circuit has explained:

> We find no support for the proposition that a judgment for money is not entitled to an automatic stay pursuant to Rule 62(d) simply because it takes the form of a declaratory judgment. . . . *The applicability of Rule 62(d) turns not on that distinction, but on whether the judgment involved is monetary or nonmonetary*, so long as the judgment is not otherwise excepted under Rule 62(a). Here, the district court's declaratory judgment binds Albany to pay a specific sum of money. Accordingly, both the language of Rule 62(d) and its underlying rationale entitle Albany to an automatic stay pending appeal in this case.

Hebert, 953 F.2d at 937 (emphasis added); *accord In re TWA*, 18 F.3d at 213–14. Similarly here, the judgments at issue are not otherwise excepted under Rule 62(a)[8] and are grounded in monetary sanctions imposed against Appellants by the Bankruptcy Court.[9] Accordingly, the

---

[8] Injunctions, receiverships, and patent accountings are excepted from the automatic stay provided by Rule 62(d). Fed. R. Civ. P. 62(a); *Hebert*, 953 F.2d at 938 n.3.

[9] The Trustee cites an unpublished opinion from a bankruptcy case in the Southern District of Texas—available only through accessing that court's docket—for the proposition that contempt orders awarding monetary transfers should not be considered money judgments for purposes of Federal Rule of Civil Procedure 69(a)(1), which pertains to the execution of money judgments. This opinion is neither binding nor persuasive authority, and the Court instead relies on the case

Court finds that the Prossers have requested a stay of money judgments, subject to an automatic stay under Rule 62(d).

### D.     The Chapter 7 Trustee's Mootness and Ripeness Arguments

Article III of the Constitution constrains federal courts to hearing only live "cases or controversies." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). From the "case or controversy" requirement comes the principle that courts cannot review moot cases—actions in which "'a change in circumstances since the beginning of litigation precludes any occasion for meaningful relief.'" *Surrick v. Killon*, 449 F.3d 520, 526 (3d Cir. 2006) (quoting *Old Bridge Owners Coop. Corp. v. Twp. of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001)). The Supreme Court recently summarized the concept of mootness:

> There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (internal citation and quotation marks omitted).

Ripeness, in contrast, prevents courts from 'entangling themselves in abstract disagreements.'" *Surrick*, 449 F.3d at 527 (quoting *Abbots Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). In order for a case to be ripe, "it must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal citation and quotation marks omitted).

The Chapter 7 Trustee argues both that the stay requested is moot and that it is not yet ripe. The Court finds both arguments unpersuasive.

---

law cited above.

1.  **Mootness**

The Chapter 7 Trustee contends that "[t]he request for a stay as to each of the Contempt Orders here is moot." (3:13-cv-00010, Dkt. No. 43 at 7). The Trustee first argues that the Prossers' requests for stays of the January 2013 and May 24, 2013 Orders—levying the initial and supplemental sanction awards, respectively, and ordering payment within thirty days—became moot when the Bankruptcy Court issued the May 31, 2013 Compliance Order. According to the Trustee, the May 31, 2013 Compliance Order mooted the requests for stays of the two prior Orders because it created a payment plan for the sanctions and required the Prossers to convey title to the Anna's Hope Property to the Chapter 7 Trustee in the event of default on the payment schedule. The Trustee further argues that the Prossers' request for a stay of the May 31, 2013 Compliance Order became moot when the Prossers defaulted on the payment schedule and the Bankruptcy Court issued the August 2013 Transfer Order authorizing the Chapter 7 Trustee to execute quitclaim deeds on the Prossers' behalf, thus transferring the Anna's Hope Property to the Trustee. Finally, the Trustee argues that after he executed the quitclaim deeds for the Anna's Hope Property on September 9, 2013, the transfer of the property was complete and the Prossers' request for a stay of the August 23, 2013 Order became moot.

The Court disagrees with the Chapter 7 Trustee's mootness argument because the transfer of the Anna's Hope Property is intimately associated with its sale for purposes of satisfying the sanction awards. The instant request for a stay is of the August 23, 2013 Order, which authorized the transfer *and sale* of the Anna's Hope Property to the Trustee.[10] (Bk. Dkt. No. 1133 at 3). The

---

[10] The Chapter 7 Trustee argues that, because "[t]he Prossers never sought a stay in the Bankruptcy Court of the first two Contempt Orders," they "failed to comply with Rule 8005 of the Federal Rules of Bankruptcy Procedure," which provides that a party should first request a stay from the Bankruptcy Judge before so moving in the district court. (3:13-cv-00010, Dkt. No. 43 at 15 n.4). Accordingly, the Chapter 7 Trustee argues that "[n]o stay should be entertained

15

Prossers argue that the Bankruptcy Court erred because the Anna's Hope Property cannot be used to satisfy the sanction awards given its exempt classification. (3:13-cv-00087, Dkt. No. 7 at 27–28). This argument, on appeal, presents a live case or controversy because if the Court finds on the merits that the Prossers' argument is correct, it will grant relief to the Prossers by reversing the Bankruptcy Court's Order authorizing the transfer and sale of the Anna's Hope Property to satisfy the sanction awards. *Chafin*, 133 *S. Ct. at 1023*. The controversy was not mooted by the execution of the quitclaim deeds because the Anna's Hope Property has not yet been sold to satisfy the sanction awards—the ultimate purpose of the transfer. (Bk. Dkt. No. 1133 at 3).[11] Accordingly, this Court has jurisdiction to stay the proceedings pending the resolution on the merits of the Consolidated Appeal by enjoining the Chapter 7 Trustee from selling the Anna's Hope Property.

### 2. Ripeness

Alternatively, the Chapter 7 Trustee argues that the sale of the Anna's Hope Property may not be enjoined because it is not ripe, given that "[t]he Bankruptcy Court has not entered an Order authorizing the Trustee to sell the Anna's Hope Property." (3:13-cv-00010, Dkt. No. 43 at 17). On October 10, 2013, after Appellants filed their Reply in this matter, the Bankruptcy Court

---

with regard to the first two Contempt Orders because the Prossers failed to comply with Rule 8005." (*Id.*) Without addressing the merits of this argument, the Court reiterates that it is evaluating only the Prossers' request for a stay of the Bankruptcy Court's August 23, 2013 Order authorizing the transfer and sale of the Anna's Hope Property—an Order regarding which the Trustee concedes the Prossers sought a stay in the Bankruptcy Court. (*Id.*)

[11] This situation is distinguishable from one in which the trustee has already sold the property to a third party. *See, e.g.*, *In re Combined Metal Reductions Co. v. Gemmill*, 557 F.2d 179, 185–87 (9th Cir. 1977) ("The trustee acted here only as the district judge authorized him to act; absent a stay of the court's orders, the trustee cannot be faulted for disposing of the various properties in accordance with those orders. The burden of obtaining stays of the district court's orders was on the appellant, and in view of the well-established rule that an appeal will not affect the validity of a judgment or order during the pendency of the appeal, absent a stay or supersedeas, we have no difficulty in rejecting appellant's . . . argument.").

granted the Chapter 7 Trustee's motion to market the Anna's Hope Property. (3:06-bk-30009, Dkt. No. 4296). The Trustee contends that because it "will be required to return to the Bankruptcy Court to obtain approval of any ultimate sale of the Anna's Hope Property" and because this process will "likely [take] many months . . ., if not longer," the matter is not ripe. (3:13-cv-00087, Dkt. No. 21 at 5).

The Court finds that the matter is ripe. The Bankruptcy Court's August 2013 Order authorized the transfer of the Anna's Hope Property from the Prossers to the Trustee, and further ordered that: "The Chapter 7 Trustee shall . . . sell the Anna's Hope Property for the purpose of satisfying the amounts due on the Initial Sanctions Award and Supplemental Sanctions Award." (Bk. Dkt. No. 1133 at 3). Thus, contrary to the Trustee's contention, as of August 23, 2013, there was an Order from the Bankruptcy Court authorizing the transfer and sale of the Anna's Hope Property to satisfying the sanction awards.

The Bankruptcy Court has now authorized the Chapter 7 Trustee to market the Anna's Hope Property and entertain bids for it. (3:06-bk-30009, Dkt. No. 4296). In other words, the Trustee has received authorization to actively attempt to sell the property. The fact that the specifics of any sale would require the Bankruptcy Court's approval does not change the fact that the sale of the Anna's Hope Property was previously authorized by the Bankruptcy Court to satisfy the sanction awards. Therefore, it is appropriate for the Court to grant the Prossers' Motion to Stay, thereby enjoining the ultimate sale of the Anna's Hope Property until the issues on appeal—whether the Bankruptcy Court erred in levying the sanction awards and whether the Anna's Hope Property may be used to satisfy the sanction awards despite its exempt status—are resolved on the merits.

## IV. **CONCLUSION**

For the reasons stated above, the Court finds that the Anna's Hope Property is an adequate supersedeas bond and therefore will stay the proceedings. This Memorandum Opinion supports the Order filed on November 15, 2013 (3:13-cv-00087, Dkt. No. 23).

Date:  November 22, 2013                                  _____/s/_____
                                                                                 WILMA A. LEWIS
                                                                                 Chief Judge